# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

**UNITED STATES OF AMERICA**,

Plaintiff,

v.

**$302,172.49 IN UNITED STATES CURRENCY, SEIZED FROM U.S. BANK ACCOUNT NUMBER X1491, IN THE NAME OF THE ASTI CORPORATION D/B/A J'S PAWN**,

Defendant.

Case No.   22-00135-CV-W-SRB

## COMPLAINT FOR FORFEITURE *IN REM*

The Plaintiff, United States of America, by its attorneys, Teresa A. Moore, United States Attorney for the Western District of Missouri, and Nhan D. Nguyen, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.     This is an action to forfeit property to the United States for violations of 18 U.S.C. § 981(a)(1)(C).

## THE DEFENDANT *IN REM*

2.     The defendant property consists of $302,172.49 in United States currency, seized from U.S. Bank account number 145572391491, in the name

of The Asti Corporation d/b/a J's Pawn, which was seized on or about October 21, 2021, pursuant to Seizure Warrant 21-SW-00447-LMC, issued on or about October 15, 2021.

3. The defendant property is in the custody of the United States Postal Inspection Service.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981 (a)(1)(C).

5. This Court has *in rem* jurisdiction over the defendant property, pursuant to 28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in this district, and, pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the action accrued in this district.

6. Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in this district, and, pursuant to 28 U.S.C. § 1395, because the action accrued in this district.

2

## BASIS FOR FORFEITURE

7.     The defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes, or is derived from, proceeds traceable to any offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)) or a conspiracy to commit such offense, with such offenses including violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 2314 (interstate transportation of stolen property).

## FACTS

### Background

8.     J's Pawn is a Missouri-based company that was originally registered with the Missouri Secretary of State's Office in 2007.

9.     The fictitious name registration documents listed Judy Santa Maria as the company's owner and "1380 Brush Creek Boulevard, Kansas City, MO 64110" as the company's address.

10.     J's Pawn is located in Kansas City, within the Western District of Missouri.

11.     J's Pawn operates under The Asti Corporation.

12.     The Asti Corporation is a Missouri-based corporation that was originally formed in December 1999.   Since 2004, annual registration

3

documents, filed with the Missouri Secretary of State's Office, listed "Judy L. Santa Maria" as the corporation's president.

13.     Judy Santa Maria and Frank Santa Maria are married and live in Leawood, Kansas.

14.     Video surveillance of J's Pawn indicated that while Judy Santa Maria's name is legally associated with J's Pawn and The Asti Corporation, Frank Santa Maria operates J's Pawn on a day-to-day basis with several employees.

15.     Pawnshops are prevalent in the Kansas City metropolitan area and are generally engaged in the business of purchasing items for resale, or accepting or conditionally purchasing items for use as collateral on personal loans.

16.     In Kansas City, Missouri, pawnshop operations are subject to the provisions of Chapter 367 of the Missouri Revised Statutes and Chapter 54 of the Code of Ordinances for Kansas City, Missouri. These chapters provide requirements that pawnshops must follow.

17.     One such requirement is that every licensed pawnshop must make computer entries in a third-party database outlining the property the pawnshop accepted, purchased, or otherwise received.

18.     Specifically, these entries must occur daily and include detailed descriptions of the property obtained, as well as a description of the person

4

leaving or selling the property, including, but not limited to, the person's name, date of birth, and contact information.

19. In Kansas City, Missouri, pawnshop operators must transfer the above-outlined information to the third-party database LeadsOnline.

20. The LeadsOnline database is searchable by law enforcement personnel. Specifically, law enforcement personnel can search the database and view information regarding the specific items a particular pawnshop accepted, purchased, or otherwise received on a specific day, as well as search the database and view information regarding the items a specific individual sold to a pawnshop on a specific day.

**Case Initiation**

21. On or about July 11, 2019, Kansas City, Missouri, Police Department ("KCPD") Detective Timothy Mountz was contacted by Merriam Police Department Crime Analyst Seth Potts regarding a shoplifting suspect ("Individual 1"). Crime Analyst Potts informed Detective Mountz that Individual 1's vehicle had eluded police officers after completing a suspected shoplifting at a Walgreens store.

22. Detective Mountz ran a search of Individual 1 in LeadsOnline, which revealed that Individual 1 had previously sold items to J's Pawn.

5

23.     Detective Mountz initiated surveillance of J's Pawn, and shortly thereafter, Detective Mountz observed Individual 1's vehicle arrive at J's Pawn.

24.     Detective Mountz observed Individual 1 remove items from the vehicle and observed Individual 1 enter J's Pawn.

25.     Individual 1 was subsequently taken into custody while attempting to sell items to J's Pawn, including new ink cartridge sets.

26.     On August 21, 2019, Detective Mountz, and other KCPD personnel, met with representatives from the Target Corporation.

27.     At the meeting, the Target representatives informed Detective Mountz that Target stores were experiencing a high loss of products from shoplifting in the Kansas City metropolitan area.

28.     Specifically, the Target representatives stated that the loss associated with various vacuum cleaners and ink cartridge sets in the Kansas City metropolitan area were amongst the highest loss amounts in the nation.

29.     Additionally, the Target representatives advised that they had linked an eBay page—with the username judeinkc—to J's Pawn and advised that the page appeared to be selling new items in their original packaging.

30.     Detective Mountz reviewed the LeadsOnline database for purchases made by J's Pawn, which revealed that J's Pawn regularly purchased large amounts of new, in-the-box items from numerous individuals.

6

31.     Additionally, Detective Mountz conducted searches of the judeinkc eBay page.  These searches revealed that the judeinkc eBay page was selling large amounts of new, in-the-box items that appeared to be similar to the items listed on the J's Pawn LeadsOnline entries.

Individual 2 and Individual 3 – 2019 Shoplifting and J's Pawn Activity

32.     Using both video surveillance and the LeadsOnline database, Detective Mountz identified numerous people selling new, in-the-box items to J's Pawn on a daily or weekly basis.

33.     To investigate where these individuals were obtaining the items, Detective Mountz applied for several state-level search warrants that authorized the GPS tracking of the individuals' vehicles for a 30-day period.

34.     On September 18, 2019, one such search warrant was signed, approving the installation of a GPS-tracking device for a 30-day period on the vehicle utilized by two individuals regularly observed at J's Pawn, Individuals 2 and 3.

35.     Over the 30-day tracking period, spanning from approximately September 24, 2019, to approximately October 20, 2019, the vehicle traveled to numerous CVS and Walgreens stores in the Western District of Missouri.

36.     Video surveillance and photographs obtained from a CVS store location showed Individual 2 stealing several items from that store.

7

37.    After traveling to retail stores, Individuals 2 and 3 made regular trips to J's Pawn, as evidenced by the GPS-tracking device, video surveillance, and LeadsOnline records, where Individual 3 sold items using another person's driver's license.

38.    Specifically, when selling items to J's Pawn, Individual 3 used the identity of Individual 4.

39.    For example, over the two-day period spanning September 24, 2019, and September 25, 2019, GPS records show the vehicle traveled to three CVS stores, five Walgreens stores, and then traveled to J's Pawn one time each day. On each day, LeadsOnline records showed that Individual 4's identification was used to sell items at the same time the GPS-tracked vehicle was at J's Pawn. Specifically, LeadsOnline records showed that approximately 60 items were sold under Individual 4's name on September 24, 2019, and September 25, 2019, including seven boxes of Rogaine products and 18 ink cartridge sets.

40.    From September 24, 2019, to October 20, 2019, Individual 3, using Individual 4's name, sold items to J's Pawn on 18 occasions and sold over 300 items.

41.    The items sold include, but are not limited to: Rogaine, ink cartridge sets, Crest Whitestrips, electronic thermometers, electric

toothbrushes, nasal irrigation kits, and various over-the-counter medications and supplements.

42.    Additionally, it appears that Individual 3 routinely sold multiples of the same item, at the same time, as indicated by the number of "total buys" on the LeadsOnline records.

43.    For example, during this period, Individual 3 sold 15 ink cartridge sets at one time, seven thermometers at one time, and five boxes of Rogaine at one time.

44.    While it appears that Individual 3 completed most of the sales with J's Pawn during the GPS-tracking period, the LeadsOnline records do indicate that Individual 2 also sold items to J's Pawn.

45.    Specifically, during the GPS-tracking period, Individual 2 sold items to J's Pawn on three occasions and sold approximately 15 items, including, but not limited to, ink cartridge sets and nasal irrigation kits.

46.    For the sales made during this period, Individuals 2 and 3 received over $5,000.

47.    During the period the GPS-tracking device was active, well over 1,500 individual items were sold on the judeinkc eBay page.

48.    Most of the items sold were described as being new, using descriptions including, but not limited to, "new," "sealed," "new in the box," "brand new in the box," "new in the retail box," and "new sealed package."

49. The items sold include, but are not limited to, ink cartridge sets, Rogaine, Crest Whitestrips, electronic thermometers, electric toothbrushes, nasal irrigation kits, and various over-the-counter medications and supplements.

50. Many of the postings advertising the items indicated that multiple quantities of the items were available for purchase.

51. On or about October 7, 2019, a posting was made advertising 24 ink cartridge sets; on October 10, 2019, a posting was made advertising 46 boxes of Rogaine.

<u>Individual 2 and Individual 3's Arrest and Interviews</u>

52. After stealing from a Kansas City Walgreens store, on or about October 23, 2019, KCPD officers arrested Individuals 2 and 3.

53. Detective Mountz and KCPD Detective Craig Leach questioned Individuals 2 and 3. After being advised of their *Miranda* rights, and after initial denials, both Individuals 2 and 3 separately admitted to stealing items from numerous Walgreens and CVS stores and selling the stolen items to J's Pawn.

54. They stated that Individual 2 routinely brings a white bag into the store, fills the bag with stolen items, and walks out the front door.

55. Additionally, both admitted that Individual 3 routinely uses Individual 4's license to sell the items to J's Pawn.

10

56.     During the interview, both Individuals 2 and 3 referenced Frank Santa Maria by name and stated that they have sold stolen items to all of the employees working at J's Pawn.

57.     During Individual 2's interview, Individual 2 stated that on occasion, Frank Santa Maria has told Individual 2 what specific items he needs and what specific items to stop bringing in.

58.     Individual 2 stated that, on at least one occasion, Individual 2 witnessed a J's Pawn employee buy an item with an asset protection "spider-wire" device still attached.

59.     When asked if the employees knew that they are buying stolen merchandise, Individual 2 responded, "I would imagine."

60.     During Individual 3's interview, Individual 3 stated that Frank Santa Maria has specific prices for the items he buys and that, on occasion, Frank Santa Maria will look up specific items on eBay before purchasing them.

61.     Individual 3 stated that stealing and selling those items to J's Pawn was Individual 3's only source of income and that Individual 3 has been selling stolen items to J's Pawn since before 2015.

<u>Individual 2 and Individual 3's – Post-arrest Activity</u>

62.     On January 18, 2021, KCPD Detective Tony Halford conducted searches in the LeadsOnline database that showed both Individuals 2 and 3

11

have continued to sell property to J's Pawn after being arrested and questioned by KCPD.

63. From October 1, 2020, to October 26, 2020, Individual 2 went to J's Pawn on 10 occasions and sold over 300 individual items.

64. Items sold include, but are not limited to, Rogaine, various razor blades, shoe insoles, various teeth-whitening products, various tobacco-cessation products, and various over-the-counter supplements and medications.

65. Over this period, it appears that Individual 2 routinely sold multiples of the same product at the same time, as indicated by the number of "total buys" on the LeadsOnline records.

66. During this period, Individual 2 sold 10 boxes of Rogaine at one time, 23 boxes of Nicorette gum at one time, 11 sets of Dr. Scholl's insoles at one time, five boxes of Crest Whitestrips at one time, and on numerous occasions, sold 10 boxes or bottles of the same supplement or medication at one time.

67. For the items sold from October 1, 2020, to October 26, 2020, Individual 2 received over $4,000.

68. From October 1, 2020, to January 9, 2021, it appears that Individual 3 sold items to J's Pawn on 20 occasions and sold over 300 individual items.

12

69. Items sold include, but are not limited to, Rogaine, various razor blades, various teeth-whitening products, various tobacco-cessation products, various over-the-counter supplements and medications, ink cartridge sets, and various electronics.

70. Like Individual 2, Individual 3 routinely sold multiples of the same product at the same time, as indicated by the number of "total buys" on the LeadsOnline records.

71. For example, during this period, Individual 3 sold 18 packs of Nicorette gum at one time, six ink cartridge sets at one time, and 10 boxes of Crest Whitestrips at one time.

72. For the items sold from October 1, 2020, to January 9, 2021, Individual 3 received over $6,500.

<u>The judeinkc eBay Page</u>

73. eBay is an online auction and shopping website that provides a forum to connect sellers and buyers.

74. According to records obtained from eBay, the judeinkc eBay page is registered to Judy Santa Maria, has a registered email address of jspawnkc@gmail.com, and has a registered physical address of "1380 Brush Creek Blvd., Kansas City, MO 64110."

75. According to eBay records, the judeinkc eBay page has been actively selling items since April 2014.

13

76.     Additionally, eBay records indicate that since 2017, the main Internet Protocol ("IP") address used to list items for sale on the judeinkc eBay page has been 76.193.145.187.

77.     Records obtained from AT&T showed that the IP address is assigned to an account under the name of "Frank Santa Maria DBA J+" with a listed address of "1380 Brush Creek Blvd., Kansas City, MO 64110" and a listed email address of jspawn@prodigy.net.

78.     From July 1, 2019, to July 24, 2021, approximately 64,183 sales occurred on the judeinkc eBay page.

79.     The majority of the items sold were described as being brand new, by using descriptions including, but not limited to, "new," "sealed," "new in the box," and "new in the retail box."

80.     The items sold include items similar to those stolen and sold by Individuals 2 and 3, as well as other known shoplifters, including, but not limited to, ink cartridge sets, Rogaine, various razor blades, various teeth-whitening products, Dr. Scholl's insoles, electronics, and various over-the-counter supplements and medications.

81.     J's Pawn utilized the United States Postal Service ("USPS") to ship new, in the box items sold on the judeinkc eBay page.

82.     From July 1, 2019, to February 15, 2021, eBay records showed that approximately 55,580 sales were made on the judeinkc eBay page.

14

83.     In order to defraud their customers, Frank Santa Maria, Judy Santa Maria, and the Asti Corporation, knowingly caused to be transmitted in interstate commerce, by wire communication, using the judeinkc eBay page, certain writings, signs, signals, and sounds, namely representations regarding merchandise they were offering for sale, which purported said merchandise to be legitimately offered for sale by a lawful owner of the merchandise, when that the merchandise was in fact stolen.

84.     During this time, USPS records showed that approximately 51,606 parcels were mailed from J's Pawn to individuals throughout the United States.

85.     A PayPal account ending in 5779 was identified as receiving funds from sales made on the judeinkc eBay page.

86.     The PayPal account has Judy Santa Maria listed as the registered user, J's Pawn listed as the registered business name, jspawn@prodigy.net listed as the registered email address, and "1380 Brush Creek Blvd., Kansas City, MO 64110" listed as the registered physical address.

87.     PayPal records showed the account received approximately 37,770 payments from July 1, 2019, to August 7, 2020.

88.     Almost all of these funds were associated with eBay sales on the judeinkc eBay page.

89.     According to eBay records, approximately 37,482 sales occurred on the judeinkc eBay page from July 1, 2019, to August 7, 2020.

90.     The account's transaction logs indicate that after the funds were received by the PayPal account, the funds were routinely used to pay for eBay shipping costs and deposited into U.S. Bank account number 145572391491.

91.     From July 1, 2019, to February 15, 2021, the PayPal account ending in 5779 deposited approximately $1,330,900 into U.S. Bank account number 145572391491.

92.     On or about August 8, 2020, the judeinkc eBay page started using eBay's managed payment service.  Through this service, eBay deposits proceeds into a bank account designated by the eBay seller.

93.     Records obtained by U.S. Bank indicated that from August 8, 2020, to July 31, 2021, deposits totaling $962,508.61 were deposited by eBay into U.S. Bank account number 145572391491.

94.      U.S. Bank records indicate that eBay deposits are made into U.S. Bank account number 145572391491 every seven days. For example, in July 2021, the following eBay deposits were made into the U.S. Bank account: an eBay deposit totaling $9,633.46 was made on July 7, 2021; an eBay deposit totaling $27,162.66 was made on July 14, 2021; an eBay deposit totaling $22,615.66 was made on July 21, 2021; and an eBay deposit totaling $20,848.14 was made on July 28, 2021.

16

95.     U.S. Bank records showed that U.S. Bank account number 145572391491 is a business checking account assigned to The Asti Corporation DBA J's Pawn, with Judy Santa Maria and Frank Santa Maria listed as authorized signers.

## Summer 2021 Activity

96.     On July 21, 2021, and July 22, 2021, Detective Tony Halford conducted searches in the LeadsOnline database, which showed both Individuals 2 and 3 were still selling new, in the box items to J's Pawn.

97.     LeadsOnline records were reviewed for Individuals 2 and 3 for the period of June 15, 2021, to July 15, 2021.

98.     From June 15, 2021, to July 15, 2021, Individual 2 went to J's Pawn on 12 occasions and sold approximately 85 items.

99.     The items sold appear to be similar to those that Individual 2 sold to J's Pawn on or between October 1, 2020, and October 26, 2020, as provided above.

100.    The items sold from June 15, 2021, to July 15, 2021, include, but are not limited to, Rogaine, Gillette razor blades, Gillette razors, HP ink cartridge sets, Colgate teeth-whitening products, and over-the-counter supplements and medications.

17

101.    During this period, it appears that Individual 2 sold multiples of the same product at the same time, as indicated by the number of "total buys" or "buy total" on the LeadsOnline records.

102.    For example, during this period, Individual 2 sold 13 Gillette Mach 3 razors at the same time, four Colgate optic teeth-whitening pens at the same time, three 30-count bottles of Prevagen at the same time, and two boxes of Rogaine at the same time.

103.    For the items sold from June 15, 2021, to July 15, 2021, Individual 2 received approximately $2,999.

104.    From June 15, 2021, to July 15, 2021, Individual 3 sold items to J's Pawn on six occasions and sold approximately 116 items.

105.    The items sold appear to be similar to those that Individual 3 sold to J's Pawn between October 1, 2020, and October 26, 2020, as provided above.

106.    The items sold between June 15, 2021, and July 15, 2021, include, but are not limited to, Rogaine, Gillette razor blades, Philips face and body shavers, smoking cessation gum, Quip electronic toothbrushes, and over-the-counter supplements and medications.

107.    During this time, Individual 3 sold multiples of the same product at the same time, as indicated by the number of "total buys" or "buy total" on the LeadsOnline records.

108. For example, it appears Individual 3 sold 27 packages of Gillette razor blades at one time, 12 packages of Gillette razor blades at one time, 10 packages of an unnamed smoking cessation gum at one time, eight Quip electronic toothbrushes at one time, four Braun electronic thermometers at one time, and three boxes of Rogaine at one time.

109. For the items sold from June 15, 2021, to July 15, 2021, Individual 3 received approximately $1,252.

110. On or about July 23, 2021, a review of the judeinkc eBay page revealed that the page continues to advertise new, in the box items for sale. On July 23, 2021, the judeinkc eBay page had over 500 new, in the box products listed for sale including, but not limited to, Rogaine, Gillette razor blades, Gillette razors, HP ink cartridge sets, Colgate optic teeth-whitening pens, various over-the-counter supplements and medications, Philips electronic razors, Quip electronic toothbrushes, and Braun electronic thermometers.

### eBay Proceeds Identified as the Result of the Fraud Schemes

111. To separate the stolen items sold on the judeinkc eBay page from the potentially non-stolen items, investigators conducted a technical analysis of the eBay records.

112. Investigators first examined the LeadsOnline database records to identify the various items that have been sold to J's Pawn by known shoplifters.

113.	After reviewing the items sold by known shoplifters, investigators reviewed the eBay records and totaled the proceeds J's Pawn obtained from the sale of all similar items on the judeinkc eBay page.

114.	For example, as outlined above, Individual 3 sold J's Pawn ink cartridge sets on several occasions. Therefore, as part of the analysis to obtain the total amount of illegally obtained proceeds, investigators calculated the total dollar amount that J's Pawn made on selling ink cartridge sets on eBay, regardless of who sold the ink cartridge sets to J's Pawn.

115.	Numerous postings advertising items determined to be stolen property were examined with regard to the advertised price.

116.	In each instance, the price advertised on the judeinkc eBay page was below market price.

117.	From January 1, 2017, to July 24, 2021, approximately 130,534 items were sold using the judeinkc eBay page, resulting in customers paying a total of approximately $5,191,305.14.

118.	Using the above-outlined criteria to determine the number of stolen items sold on the eBay page, investigators determined that approximately 128,427 items sold on the judeinkc eBay page were stolen,

resulting in approximately $5,087,903.59 in total customer payments. The following chart provides a breakdown by year:

| Year | Total items sold | Total Payment Amount | Total Stolen items sold | Payment Amount for Stolen Items |
|---|---|---|---|---|
| 2021 | 17,488 | $677,037.37 | 17,485 | $673,445.49 |
| 2020 | 54,696 | $1,634,397.55 | 53,551 | $1,594,879.25 |
| 2019 | 31,666 | $1,277,046.74 | 31,227 | $1,258,132.50 |
| 2018 | 18,604 | $1,010,885.00 | 18,313 | $987,022.51 |
| 2017 | 8,080 | $591,938.48 | 7,851 | $574,423.84 |
| TOTALS | 130,534 | $5,191,305.14 | 128,427 | $5,087,903.59 |

## GROUNDS FOR FORFEITURE

119. The Government is not required, at the pleading stage, to trace illicit funds. *See United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015) ("[T]he Government is not required to prove its case simply to get in the courthouse door."). Indeed, there are several theories of forfeiture and the Government is entitled to use the theory that best supports forfeiture. *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159-60 (2d Cir. 1986) ("[F]ew cases will present facts that neatly match untainted deposits with withdrawals, and the real question therefore becomes which side bears the risk of the inevitable uncertainty that will arise in most cases. Congress has answered that question in the Government's favor by assigning it a lenient burden of proof in obtaining forfeiture of 'traceable proceeds' of drug transactions."). The most straightforward civil theory of forfeiture is fungibility. If illicit money is deposited in a bank account, any money found in

21

the same account within one year is deemed to be the same money, even if there is evidence that the illicit money was withdrawn and replaced by other money. 18 U.S.C. § 984; *see also United States v. $79,650 Seized from…Afework*, 2009 WL 331294, *3 (E.D. Va. Feb. 9, 2009) ("The statute loosens the burden on the Government to 'trace' forfeitable property from its initial location at the time it became subject to forfeiture to its ultimate location.").

## FUNGIBILITY

120. The Government may forfeit funds on deposit in an account where, within the last year, funds subject to forfeiture have been deposited, without identifying the specific funds involved in the offense. In pertinent part, 18 U.S.C. § 984(a) provides:

> (1)  In any forfeiture action *in rem* in which the subject property is cash or funds deposited in an account in a financial institution;
>
> > (A)  it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
> >
> > (B)  it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2)  Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that

22

is the basis for the forfeiture shall be subject to forfeiture under this section.

121. Section 984 allows the United States to seize for civil forfeiture identical property found in the same place where the "guilty" property had been kept. *See United States v. All Funds Presently on Deposit at American Express Bank*, 832 F. Supp. 542, 558 (E.D.N.Y. 1993).

### One-Year Limit on Fungibility

122. The "fungibility" rule of Section 984(b) cannot reach back in time for an unlimited period. Section 984(b) provides:

No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

123. Section 984(b) applies so long as the "action" to forfeit the property is commenced within one year from the date of the offense giving the basis for the forfeiture. Here, as described above, the dates of the offense giving rise to the seizure are within the one-year period.

124. While Section 984 does not explicitly define the term "action," the section's legislative history clearly establishes that Congress intended the seizure of property to constitute the "action" to be commenced within one year

23

of the offense in order to obtain the benefit of the application of that section's

fungibility rule:

> Sec. 984 provides that in cases involving fungible property, property is subject to forfeiture if it is identical to otherwise forfeitable property, is located or maintained in the same way as the original forfeitable property, and not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated by seizing the property or filing the complaint, regardless of whether or not the fungible property was continuously present or available between the time it became forfeitable and the time it was seized. Money Laundering Enforcement Amendments of 1991, H.R. Rep. No. 102-28 (Mar. 20, 1991), 1991 WL 42201; *see also American Express Bank*, 832 F. Supp. at 558 (quoting legislative history that Section 984 applies to money in seized accounts to the extent that money involved in money laundering or structuring existed in those accounts within one year of the seizure).

125. Section 984 makes property sought for forfeiture subject to

seizure and forfeiture to the extent that monies involved in the illegal activity

were located in the accounts in the year preceding the initiation of this case.

### FORFEITURE OF THE DEFENDANT PROPERTY

$302,172.49 in United States currency seized,
from U.S. Bank account number 145572391491, in the name of
The Asti Corporation d/b/a J's Pawn,
seized pursuant to Seizure Warrant 21-SW-00447-LMC,
issued on October 15, 2021

126. On or about November 28, 2012, U.S. Bank account number

145572391491 was opened in the name of The Asti Corporation. The account

listed Judy Santa Maria as the signer.

127. On or about January 14, 2013, a business signature card

addendum was submitted for U.S. Bank account number 145572391491 with

the listed name The Asti Corporation DBA J's Pawn adding Frank Santa Maria as a signer.

128. From March 3, 2021, to July 28, 2021, 22 eBay deposits were made into U.S. Bank account number 145572391491.

129. In sum, the eBay deposits into U.S. Bank account number 145572391491 totaled $350,198.89.

130. Using the analysis outlined above, customer payments totaling approximately $3,591.88 were received for the purchase of potentially non-stolen items on the judeinkc eBay page during the 2021 calendar year.

131. After subtracting $3,591.88 from $350,198.89, as calculated above, a total of $346,607.01 is reached.

132. Therefore, $346,607.01 represents the total of illegally obtained proceeds deposited into the U.S. Bank account number 145572391491, from March 3, 2021, to July 28, 2021, related to the above-described scheme.

133. As the $346,607.01 in illegally obtained proceeds were deposited into U.S. Bank account number 145572391491 by eBay between March 3, 2021, and July 28, 2021, $346,607.01 is subject to seizure based on fungibility.

134. On October 15, 2021, The District Court for the Western District of Missouri granted Seizure Warrant 21-SW-00477-LMC for all funds up to $346,607.01 in U.S. Bank account number 145572391491.

135.    On October 21, 2021, the seizure warrant was executed and $302,172.49 was seized from U.S. Bank account number 145572391491, the defendant property.

136.    These funds are forfeitable based on probable cause of criminal activity, as proceeds of the mail fraud scheme, wire fraud scheme, interstate transportation of stolen goods, or the conspiracy to commit those offenses.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

137.    The Plaintiff repeats and incorporates by reference the paragraphs above.

138.    By the foregoing and other acts, the defendant property, $302,172.49 in United States currency, constitutes, or was derived from, proceeds obtained from a conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 371, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

### SECOND CLAIM FOR RELIEF

139.    The Plaintiff repeats and incorporates by reference the paragraphs above.

140.    By the foregoing and other acts, the defendant property, $302,172.49 in United States currency, constitutes, or was derived from, proceeds traceable to violations of Title 18, United States Code, Section 1341,

26

that is, mail fraud, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

141.    The Plaintiff repeats and incorporates by reference the paragraphs above.

142.    By the foregoing and other acts, the defendant property, $302,172.49 in United States currency, constitutes, or was derived from, proceeds obtained from a conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

## FOURTH CLAIM FOR RELIEF

143.    The Plaintiff repeats and incorporates by reference the paragraphs above.

144.    By the foregoing and other acts, the defendant property, $302,172.49 in United States currency, constitutes, or was derived from, proceeds traceable to violations of Title 18, United States Code, Section 1343, that is, wire fraud, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

## FIFTH CLAIM FOR RELIEF

145. The Plaintiff repeats and incorporates by reference the paragraphs above.

146. By the foregoing and other acts, the defendant property, $302,172.49 in United States currency, constitutes, or was derived from, proceeds obtained from a conspiracy to commit the interstate transportation of stolen property, in violation of Title 18, United States Code, Section 371, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

## SIXTH CLAIM FOR RELIEF

147. The Plaintiff repeats and incorporates by reference the paragraphs above.

148. By the foregoing and other acts, the defendant property, $302,172.49 in United States currency, constitutes, or was derived from, proceeds traceable to violations of Title 18, United States Code, Section 2314, that is, the interstate transportation of stolen property, and therefore, is forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C).

28

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that the Plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Teresa A. Moore
United States Attorney

By:

*/s/ Nhan D. Nguyen*
Nhan D. Nguyen
Assistant United States Attorney
400 E. 9th Street, Fifth Floor
Kansas City, Missouri 64106
Telephone: (816) 426-3122
Nhan.Nguyen@usdoj.gov

29

## <u>VERIFICATION</u>

I, Dennis E. Cunningham, hereby verify and declare under penalty of perjury that I am a United States Postal Inspector with the United States Postal Inspection Service, that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs eight through 136 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a United States Postal Inspector with the United States Postal Inspection Service.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/28/22

Dennis E
Cunningham

Digitally signed by Dennis
E Cunningham
Date: 2022.02.28
15:25:10 -06'00'

Dennis E. Cunningham
United States Postal Inspector
United States Postal Inspection Service

30